UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
:
BENITO DEL ROSARIO,                                :
:
                    Petitioner,                  :
:
         -v-                                              :      15-cv-7174 (KBF)
:      12-cr-81 (KBF)
UNITED STATES OF AMERICA,                          :
:      OPINION & ORDER
                    Respondent.                 :
:
------------------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 1, 2016

KATHERINE B. FORREST, District Judge:

       The Court has reviewed petitioner Benito Del Rosario's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on grounds of ineffective assistance of counsel. (Pet., 12-cr-81, ECF No. 94; 15-cv-7174, ECF No. 1.)[1] Del Rosario was convicted at a jury trial on June 25, 2012, of the sole charge in his indictment, conspiracy to distribute and to possess with intent to distribute one kilogram and more of heroin, in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 846. On October 1, 2012, this Court sentenced Del Rosario to a term of 292 months' imprisonment, to be followed by a term of 10 years' supervised release. (ECF No. 78.) Del Rosario appealed his conviction on the grounds that the evidence at trial was insufficient to warrant a conviction of conspiracy and that various errors were committed at trial; the Second Circuit affirmed Del Rosario's conviction. United States v. Del Rosario, 561 F. App'x 68 (2d Cir. 2014) (summary order). Del Rosario

---

[1] Unless otherwise noted, all citations to ECF in this Opinion & Order refer to the docket in case no. 12-cr-81.

subsequently sought a writ of certiorari from the United States Supreme Court; that petition was denied. Del Rosario v. United States, 135 S. Ct. 200 (2014).

Del Rosario now argues that he received ineffective assistance of counsel because, inter alia, his counsel failed to adequately prepare and/or call Jose Cabrera as a defense witness and improperly stipulated to the admissibility of transcripts of recorded calls. (Pet. at 5-6, ECF No. 1.)[2] Del Rosario's arguments are wholly without merit, and for the reasons set forth below, his motion is DENIED.

No evidentiary hearing is necessary in this action. The combined submissions of the parties provide a sufficient basis upon which to deny the petition, and the Court concludes that a full testimonial evidentiary hearing would not offer any reasonable chance of altering its view on the facts as alleged by Del Rosario, including the details added in his petition. See Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001) (court need not hold an evidentiary hearing where the combined submissions of the parties provide a sufficient basis to deny the petition).

I. BACKGROUND

On January 27, 2012, Del Rosario was charged with one count of conspiracy to distribute and possess with intent to distribute one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846. (ECF No. 10.) The Government filed a

---

[2] Del Rosario also claims that his counsel provided ineffective assistance because he failed to: (1) "investigate and contact" Del Rosario's brother Maximo Del Rosario ("Maximo"), (2) seek a police report to corroborate defense witness Pablo Rijo's testimony that he and Del Rosario had contacted the police on September 15, 2009, the date that federal agents searched the apartment that Del Rosario shared with Maximo, and (3) ask defense witness Lysardy Sencion whether Del Rosario continued to reside at that apartment after September 15, 2009. ((Pet. at 5-6.)

superseding indictment (the "Indictment") on April 19, 2012 that amended this sole count by lengthening the duration of the charged conspiracy to extend from in or about early 2008 through in or about June 2009. (ECF No. 27.) On May 8, 2012, the Government filed a prior felony information pursuant to 21 U.S.C. § 851, alleging that Del Rosario had been convicted, on or about April 12, 1996, of attempted possession of a controlled substance in violation of New York Penal Law § 220.16, and was therefore subject to enhanced penalties pursuant to 21 U.S.C. § 841(b)(1)(A). (ECF No. 32.)

A jury trial on the Indictment commenced on June 18, 2012 and ended on June 25, 2012. At trial, the Government's evidence consisted of: (1) transcribed and translated cellular telephone calls in which Del Rosario discussed his heroin business with Jose Cabrera ("Cabrera"), his alleged primary co-conspirator, (2) testimony of four cooperating witnesses who belonged to a heroin "cell" supplied by Del Rosario and Cabrera, (3) testimony of two Special Agents of the United States Drug Enforcement Administration ("DEA") who participated in the investigation that led to Del Rosario's arrest, and (4) physical evidence, including: (1) drug paraphernalia found in a concealed compartment in the kitchen floor of the apartment that Del Rosario shared with his brother, Maximo Del Rosario, and (2) a kilogram of heroin seized from a heroin "mill" operated by the heroin cell that Del Rosario and Cabrera supplied. In pertinent part, the evidence established at trial was as follows.

In March 2008, Del Rosario sold cooperating witnesses Aneudi Almonte ("Almonte") and Carlos Morales ("Morales")—both former minor league baseball players who, like Del Rosario, had grown up in the Dominican Republic—a kilogram of heroin. (Tr. 48-49, 63-68, 298.)[3] A few months later, Del Rosario visited Almonte's home in the Bronx to teach Almonte and Morales how to grind and process "pellets" of heroin that had been smuggled to the United States inside human couriers. (Tr. 72-74.) In around the fall of 2008, Morales and Almonte invited Del Rosario to a heroin mill they were setting up at Webb Avenue in the Bronx, and Del Rosario showed them how to "cut" and package heroin into bundles for resale. (Tr. 84-87, 327-33.)

Del Rosario subsequently sought to supply Morales and Almonte's heroin operation. (Tr. 332-33.) Because Morales was disappointed with the quality of Del Rosario's heroin, Morales turned to—among others—Cabrera, who ran a restaurant called Papagallo in the Bronx. (Tr. 335-37.) From approximately late 2008 until Morales's arrest by the DEA in June 2009, Morales bought more than eight kilograms of heroin from Cabrera. (Tr. 337.) Cooperating witness Elvin Gonzalez ("Gonzalez") worked as a driver for Morales during the relevant period and picked up packages of drugs at Morales's direction on three separate occasions from Cabrera's restaurant. (Tr. 437.) Del Rosario handed the package to Gonzalez on one such occasion. (Tr. 442-43.)

---

[3] "Tr." refers to the trial transcript.

While Morales was aware as of approximately late 2008 that Cabrera had some relationship with Del Rosario, he later learned that Cabrera and Del Rosario were actually partners in the heroin business.  (See Tr. 341-42, 447.)  Morales came to know this information during a dispute over a kilogram of bad heroin that Morales had received from Cabrera and supplied to cooperating witness Angel Danilo Raposo ("Raposo"); Raposo in turn had sold the heroin to one of his own customers who had complained to Raposo about the heroin's quality and refused to make full payment.  (Tr. 236-37, 341-42,; see Tr. 101-03.)  Morales and Raposo together approached Cabrera at his restaurant; they found Del Rosario at the restaurant, who declared that he had supplied the kilogram of heroin at issue and was therefore the person to whom the debt was ultimately owed.  (Tr. 237, 341-42.)

A few days later, Del Rosario had Morales drive him to Raposo's home.  (Tr. 239-40, 343.)  Raposo entered Morales's vehicle and listened to Del Rosario suggest that Raposo have the complaining customer come to New York so they could "tie him up or do whatever we needed to do so that we could get our money back."  (Tr. 240-41; see Tr. 343-45.)  The debt was ultimately paid without the need to resort to force.  (Tr. 242, 345.)

As noted above, the Government presented numerous recorded calls (obtained via a wiretap on Cabrera's cellular telephone from April 2009 through June 2009), all of which were either with or about Del Rosario and laden with coded discussions of drug dealing.  The cooperating witnesses testified that the members of the conspiracy used words like "Maria" and "Pedro" for heroin and cocaine,

5

respectively, "pesos" for either grams or kilograms of heroin, or thousands of dollars, "tickets" for drug money, and "photo" for sample of heroin. (See Tr. 128-29, 249-50, 354, 460-61.) These words were used by Del Rosario and Cabrera in numerous recorded calls.

The defense called seven witnesses to testify, inter alia, that Del Rosario did construction work on occasion, went fishing, and had tried to reach out to the police when he learned that his brother Maximo had been arrested. (See Tr. 656-86.) The defense argued that the cooperating witnesses were lying about Del Rosario's involvement and that the recorded calls with Cabrera involved discussions of construction work and fishing, rather than drugs. The defendant did not testify, nor did he call Cabrera or Maximo as witnesses.

After deliberating as to the charges, the jury delivered its verdict of guilty on the sole count of the Indictment. (Tr. 809-10; see ECF No. 73.)

On October 1, 2012, this Court sentenced Del Rosario to a term of 292 months' imprisonment, to be followed by a term of 10 years' supervised release, and ordered that Del Rosario pay a $100 mandatory special assessment. (ECF No. 78; see Sentencing Tr., ECF No. 81.)

II. LEGAL STANDARDS

    A. <u>Bar on Raising Issues That Were Raised or Could Have Been Raised on Direct Appeal</u>

"In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal." United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011). "An exception applies, however, if the

6

defendant establishes (1) cause for the procedural default and ensuing prejudice or (2) actual innocence." Id. This procedural bar "does not generally apply to claims of ineffective assistance of counsel." Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007).

    B.    <u>Ineffective Assistance of Counsel</u>

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) his or her counsel's performance "fell below an objective standard of reasonableness" measured under "prevailing professional norms," and (2) he or she was prejudiced by counsel's deficient performance such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington. 466 U.S. 668, 687-88, 694 (1984).

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different. Strickland, 466 U.S. at 694. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693.

III. DISCUSSION

Del Rosario argues that he received ineffective assistance of counsel on several grounds. Only two of those of grounds warrant detailed attention: (1) Del Rosario's claim that his counsel failed to adequately prepare and/or call Jose Cabrera as a defense witness, and (2) his claim that his counsel improperly stipulated to the admissibility of transcripts of recorded calls. The Court therefore focuses its discussion on these two issues. The Court then considers Del Rosario's three remaining arguments regarding defense counsel's failure to pursue Del Rosario's brother Maximo, seek to obtain a police report, and elicit certain testimony from defense witness Lysardy Sencion.

A.   Failure to Call Jose Cabrera

Del Rosario's principal claim for ineffective assistance of counsel in his petition is that his counsel failed to adequately prepare and/or call Cabrera, his alleged co-conspirator, as a defense witness. For the reasons set forth below, this argument is meritless.

To place Del Rosario's argument in its proper context, the Court must provide certain background as to Cabrera's circumstances leading up to and during Del

8

Rosario's trial.  At the time that the Government made the recorded calls that were used extensively at trial (i.e. April 2009 through June 2009), Cabrera was already under indictment in this District for heroin trafficking.  (See Indictment, No. 08 Cr. 753 (LMM) (S.D.N.Y.), ECF No. 9.)  In September 2009, Cabrera was arrested for conspiring to import approximately 340 kilograms of cocaine into the United States from in or about April 2009 through in or about July 2009.  (See No. 08 Cr. 753 (LMM), ECF No. 17.)  In July 2010, Cabrera entered a plea of guilty to conspiring to traffic heroin from in or about January 2008 through in or about April 2008, conspiring to traffic in cocaine from in or about April 2009 through in or about July 2009, and committing an offense while on bail.  (See No. 08 Cr. 753 (LMM), ECF No. 27.)  On June 16, 2011, Cabrera was sentenced principally to a term of 172 months' imprisonment.  (No. 08 Cr. 753 (LMM), ECF No. 38.)  At the time of Del Rosario's trial—which, again, took place in June 2012—New York state charges for narcotics activity that occurred in or about 2006 were still pending.  (Tr. 496.)

On June 15, 2012, three days before the commencement of jury selection for Del Rosario's trial, Del Rosario's counsel filed a motion seeking the Court to issue a writ of habeas corpus ad testificandum requiring the warden of the prison where Cabrera was then housed to produce Cabrera to testify at Del Rosario's trial.  (ECF No. 59.)  The Court granted the motion that same day.  (ECF No. 62.)  As of the second day of trial, June 19, 2012, Cabrera had yet to arrive in this District, and defense counsel had not yet decided whether he would call Cabrera as a witness. (Tr. 310.)

On June 21, 2012, defense counsel stated that his office had spoken with Cabrera in prison on the previous night and believed that Cabrera could provide exculpatory evidence as to Del Rosario. (Tr. 493-94.) Defense counsel noted, however, that Cabrera had said that he would need to speak with his lawyer before deciding whether to testify on Del Rosario's behalf. (Tr. 493-94.) The Court and the parties discussed potential Fifth Amendment self-incrimination issues that might arise if Cabrera were to be called as a witness. (Tr. 494-96.)

The defense ultimately did not call Cabrera as a witness. In support of the instant petition, Del Rosario submits an affidavit from John Meringolo, his trial counsel, in which Mr. Meringolo explains the rationale for the decision not to call Cabrera as a witness. (See Pet. at 44-46.) Mr. Meringolo's affidavit states that he interviewed Cabrera at the Metropolitan Correctional Complex to determine whether he could testify at trial, and that at the interview Cabrera "was adamant that he had never been involved in a narcotics conspiracy with Mr. Del Rosario" and "agreed to testify to that fact." (Pet. at 45.) The affidavit further states that after defense counsel's office interviewed Cabrera, Mr. Meringolo "received a call from [Cabrera's] attorney, who asked me not to call [Cabrera] as a witness and suggested that he would not testify as I anticipated." (Pet. at 45.) Mr. Meringolo states that after receiving this call, he chose not to call Cabrera to testify. (Pet. at 45.)

In light of this background, Del Rosario's argument fails both prongs of the Strickland analysis. First, there is no basis to find that Mr. Meringolo's decision not to call Cabrera rendered his performance to fall below an objective standard of

10

reasonableness. First, to the extent that Del Rosario argues that his counsel failed to adequately prepare for Cabrera's testimony, that argument is clearly meritless in light of the efforts, explained above, that defense counsel expended in obtaining a writ and interviewing Cabrera. Second, as to Del Rosario's argument that counsel was constitutionally deficient in failing to call Cabrera, "[c]ourts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2005). "'[C]ounsel's decision as to whether to call specific witnesses–even ones that might offer exculpatory evidence–is ordinarily not viewed as a lapse in professional representation.'" Id. (quoting United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000)).

The decision not to call Cabrera was a tactical decision based on the cautionary warning that Mr. Meringolo received from Cabrera's counsel that Cabrera's testimony would not be as Mr. Meringolo expected. This warning was entitled to particular weight in Mr. Meringolo's decision as it was informed by the fact that state drug charges remained pending against Cabrera at the time of Del Rosario's trial. Cabrera's counsel had a greater understanding as to whether Cabrera would invoke his right against self-incrimination—a possibility that this Court and the parties had previously discussed—or even provide testimony that was inculpatory to Del Rosario in some manner. Under the circumstances, Del Rosario's counsel decision not to call Cabrera did not fall below an objective standard of reasonableness in accepting Cabrera's counsel's representations. See

United States v. Borrero, No. 13 Cr. 58(KBF), 2014 WL 918607, at *2 (S.D.N.Y. May 12, 2014) (rejecting ineffective assistance claim based on failure to call witness where, after witness had sent defense counsel exculpatory email, witness's counsel indicated to defense counsel that his client was unwilling to testify).  This conclusion is further buttressed by the significant likelihood, in light of the pending state charges against him—and the fact that he had never pled guilty to or been sentenced for heroin trafficking during 2009, that Cabrera would have invoked his Fifth Amendment privilege if called to testify.  See Greiner, 417 F.3d at 323 & n.24 (discussing ABA Standards and established New York law reflecting that generally defense counsel should not call a witness in the presence of the jury who the lawyer knows will claim a valid privilege to testify); Campbell v. United States, Nos. 14 CV 438(CM), 06 CR 41(CM), 2015 WL 1062176, at *10 (S.D.N.Y. Mar. 9, 2015).

Second, even if defense counsel should nonetheless have called Cabrera as a witness despite his strong reasons for not doing so, there is no basis to find that the result of the trial would have been any different such that Del Rosario would have been prejudiced by counsel's decision.  Given the inculpatory testimony of four cooperating witnesses, the numerous audio recordings, and the other evidence that the Government offered in support of its case, any testimony that Cabrera would have provided would have been incredible and would certainly have been rejected by the jury.  See Borrero, 2014 WL 1918067, at *2.

    B.    <u>Stipulation to Admission of Recording Transcripts</u>

Del Rosario argues that he received ineffective assistance because his counsel stipulated to the admissibility of translated call transcripts, which, as detailed

above, comprised a significant component of the Government's case.  Del Rosario again relies primarily on the affidavit of his defense counsel, Mr. Meringolo, filed in support of his petition.  In his affidavit, Mr. Meringolo states that, in retrospect, he "believe[s] it was error to stipulate to the admissibility of the translated call transcripts."  (Pet. at 46.)  Mr. Meringolo further states that although he "zealously represented Mr. Del Rosario to the best of my ability at the time, the failure to challenge the call transcripts' admission was highly prejudicial to Mr. Del Rosario and in retrospect I sincerely regret my decision."  (Pet. at 46.)

Although Mr. Meringolo now states that, in retrospect, he believes it was error to stipulate to the admissibility of the call transcripts, his affidavit does not offer any basis for that belief.  Mr. Meringolo fails to explain why the transcripts were inadmissible or how he could have prevented them from being admitted into evidence.  Nor does Del Rosario himself offer any reason as to why it was error for defense counsel to stipulate to admissibility of the transcripts; rather, Del Rosario expressly acknowledges that the "factual and/or legal basis" for identification of this issue "has not been revealed by defense counsel and is left to the Court's discretion as to what (if any) further inquiry should be conducted."  (Pet. at 5.)  Del Rosario further states that he decided to raise this issue as part of his ineffective assistance claim "primarily because trial counsel asserts that it was."  (Pet. at 12.)

Having reviewed the parties' submissions in relation to the instant petition and the trial record, the Court finds no basis to conclude that the decision to stipulate to admission of the recordings rendered defense counsel's performance

13

deficient under the Strickland standard, or that Del Rosario suffered any prejudice as a result of that decision.

"[C]ourts routinely deny ineffective assistance claims where a petitioner challenges a stipulation to facts or evidence that would otherwise have been introduced by a witness." Campbell, 2015 WL 10627186, at *5; see also United States v. Quinones, 412 F. App'x 379, 381 (2d Cir. 2011) (summary order); United States v. Montilla, 85 F. App'x 227, 230 (2d Cir. 2003) (summary order); Barlow v. United States, No. 13 Civ. 3315(JFB), 2014 WL 1377812, at *9 (E.D.N.Y. Apr. 8, 2014). As discussed above, there was no basis upon which Del Rosario could have successfully precluded admission of the recordings. Witnesses at the trial identified the voice on the calls themselves as those of Del Rosario and Cabrera (see Tr. 82-83, 347-48, 355), and the Government has averred that it would have called agents who made the recordings and the interpreters who prepared the transcripts to authenticate and otherwise lay the foundation for their admission. (Gov't Opp. Br. at 20, ECF No. 97.) In his petition, Del Rosario himself states that "[o]ne would have to assume that the reason trial counsel stipulated to admission into evidence of the translated call transcripts was that trial counsel realized or believed said transcripts would be received into evidence even without trial counsel's agreement." (Pet. at 12.)

Despite defense counsel's bald assertion, long after trial, that it was "error" to stipulate to the admissibility of the transcripts, defense counsel appears to have made a strategic decision to save time and avoid burdening the jury with tedious

14

testimony. See Mull v. Ford Motor Co., 368 F.2d 713, 716 (2d Cir. 1966) (stating that a "primary purpose" of stipulations is to "avoid confusion, and save time and expense for the parties, as well as for the courts"). Defense counsel's decision did not, therefore, constitute error, and it was objectively reasonable. In any event, Del Rosario has presented no basis to support the conclusion that the decision to stipulate resulted in any prejudice or altered the outcome of the trial, given that the Government would have successfully moved the recordings into evidence if their admissibility had been challenged.

### C.      Other Arguments

Del Rosario's three remaining claims for ineffective assistance of counsel warrant little attention. Del Rosario argues that his counsel was ineffective for failing to (1) "investigate and contact" Del Rosario's brother Maximo, (2) seek a police report to corroborate defense witness Pablo Rijo's testimony that he and Del Rosario had contacted the police on September 15, 2009, the date that federal agents searched the apartment that Del Rosario shared with Maximo, and (3) ask defense witness Lysardy Sencion whether Del Rosario continued to reside at that apartment after September 15, 2009. The Court takes each of these arguments in turn.

#### 1.      Failure to Contact Maximo Del Rosario

First, as to Del Rosario's claim that defense counsel should have pursued his brother Maximo as a potential witness, any effort expended in exploring that possibility would have been ill-used because Maximo was not reasonably available to testify. Maximo had been arrested on September 15, 2009 when the DEA

15

searched the apartment that Maximo and Del Rosario shared at 2051 Grand Concourse; he subsequently pled guilty to one count of conspiracy to distribute and to possess with intent to distribute heroin and cocaine on June 7, 2010. (See No. 09 Cr. 1100 (DC) (S.D.N.Y.), ECF No. 18.) Maximo was sentenced on December 20, 2010 to 24 months' imprisonment, and was back in the Dominican Republic—to which he had been deported—by the time of Del Rosario's trial. (See No. 09 Cr. 1100, ECF No. 29.)

Under these circumstances, Del Rosario could not reasonably have called Maximo as a witness, as Maximo was not allowed to re-enter to the United States as a convicted felon. See 8 U.S.C. § 1326(b); Savinon v. Mazucca, 318 F. App'x 41, 43-44 (2d Cir. 2009) (summary order). As set forth above, "counsel's decision as to whether to call specific witnesses–even ones that might offer exculpatory evidence– is ordinarily not viewed as a lapse in professional representation." Greiner, 417 F.3d at 323 (quotation marks omitted). Defense counsel here called seven witnesses to provide exculpatory evidence—it is not as if he merely rested after the Government closed its case. Furthermore, even if Maximo had testified that the drugs and the "cut" that the DEA found inside the trap in his and Del Rosario's apartment had belonged to him and not to Del Rosario, that testimony would not have countered the overwhelming proof of Del Rosario's drug dealing that was offered at trial. Such testimony would, furthermore, have been contradicted by Almonte's testimony that Del Rosario showed off and opened the trap in Almonte's presence. (Tr. 78.)

### 2. Failure to Seek Police Report

Del Rosario next argues that defense counsel's performance fell below an objective standard of reasonableness because defense counsel failed to seek to obtain a police report. Del Rosario claims that the purported police report would have corroborated the testimony of defense witness Pablo Rijo that Rijo and Del Rosario had contacted the police the day that the 2051 Grand Concourse apartment was searched by law enforcement to inquire about what had happened at the apartment that day. (See Tr. at 659-60.) Del Rosario's claim that the failure to obtain such a report constitutes ineffective assistance is meritless. Even assuming that there existed a police report as to Rijo's and Del Rosario's alleged inquiry about what had happened at the apartment, the report would have been cumulative and was minimally, if at all, exculpatory. Furthermore, the evidence that the defense did offer for this point was not contested by the Government at trial. In its rebuttal summation, the Government accepted the police contact as a fact, but argued that it in no way disproved Del Rosario's guilt. (See Tr. 749-50.) Defense counsel did not err in deciding not to pursue the police report; even if counsel had obtained the police report and offered it at trial, it could in no way have supported a reasonable doubt about Del Rosario's guilt given the overwhelming proof against him.

### 3. Failure to Elicit Testimony from Lysardy Sencion

Finally, Del Rosario argues that defense counsel's performance was deficient for failure to elicit testimony from character witness Lysardy Sencion that Del Rosario resided at 2051 Grand Concourse at some point after Maximo's arrest. Even if defense counsel had tried to elicit this testimony, and even if Sencion

17

testified to the facts claimed by Del Rosario, it is not clear how that could have meaningfully helped his defense.  To the extent that such proffered testimony might have tended to support an inference that Del Rosario continued to reside at the apartment because he lacked a guilty conscience, that could in no way have supported a reasonable doubt about his guilt given the overwhelming proof against him.  Del Rosario therefore suffered no prejudice as a result of this tactical choice, a decision that was well within the range of standards of an objectively reasonable performance.

IV.     CONCLUSION

For the reasons set forth above, Del Rosario's petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 is DENIED.

The Court declines to issue a certificate of appealability because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); see Matthews v. United States, 682 F.3d 180, 185 (2d Cir. 2012).  The Court also finds, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from the denial of this motion would not be taken in good faith.  See Feliz v. United States, Nos. 01 Civ. 5544(JFK), 00 CR. 53(JFK), 2002 WL 1964347, at *7 (S.D.N.Y. 2002).

The Clerk of the Court is directed to terminate the motion at ECF No. 94 in 12-cr-81 and to terminate the action in 15-cv-7174.

SO ORDERED.

Dated:    New York, New York
          February 1, 2016

                                          KATHERINE B. FORREST
                                          United States District Judge

Copy to:
Benito Del Rosario
65645-054
F.C.I. Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640