UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

BENITO DEL ROSARIO,

Defendant.

12 Cr. 81 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

This decision resolves a *pro se* motion by defendant Benito Del Rosario—his third —for compassionate release from Federal Correctional Institution ("FCI") Fort Dix, pursuant 18 U.S.C. § 3582(c). For the reasons that follow, the Court denies the motion.

I. **Background**

The following abbreviated history of this case is limited to the information essential to understanding the pending motion. Further detail is contained in the presentence report issued on September 21, 2012, Dkt. 118 at 4–18 ("PSR"), the transcript of Del Rosario's sentencing hearing on September 28, 2012 before the Honorable Katherine B. Forrest, Dkt. 81 ("Sent. Tr."), and the orders recited herein that denied Del Rosario's earlier motions for early release, Dkts. 103, 115.

On June 15, 2012, after a five-day jury trial, Del Rosario was convicted of conspiring to distribute more than one kilogram of heroin. The trial evidence reflected that he had played a central role as the supervisor of a New York City-based heroin-trafficking conspiracy that extended from 2006 through 2009. *See* PSR ¶¶ 10–23. The PSR, whose sentencing calculations

Judge Forrest adopted, found a total offense level of 40, and a criminal history category of I.[1] *Id.* ¶¶ 38, 43. The resulting Guidelines range was 292 to 365 months' imprisonment, with a mandatory minimum sentence of 20 years' imprisonment, based on a prior felony information the Government had filed. *Id.* ¶¶ 69–70. In imposing a sentence of 292 months' imprisonment, followed by a 10-year term of supervised release, Judge Forrest noted the large quantity of heroin (between 10 and 30 kilograms) that Del Rosario had been involved in selling, his role in the conspiracy's operations, and the damage heroin does to the community. Sent. Tr. at 34–38. She found that sentence sufficient, but not longer than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a), and that she would have imposed the same sentence in the absence of the Guidelines and the statutory minimum. *Id.* at 40–41. On April 3, 2014, the Second Circuit affirmed Del Rosario's conviction. *United States v. Del Rosario*, 561 F. App'x 68 (2d Cir. 2014).

On January 15, 2015, Del Rosario filed a counseled motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c), based on Amendment 782 to the Sentencing Guidelines, which lowered the penalties for most drug offenses by reducing most offense levels on the U.S.S.G. § 2D1.1 drug quantity table by two levels. Dkt. 86. Judge Forrest initially denied the motion as premature, Dkt. 87, based on a district-wide policy of deferring action on such motions until closer to the defendant's release date, but, after that policy was rescinded, the Second Circuit, on January 12, 2016, vacated and remanded on consent, Dkt. 99. In a decision issued March 10, 2016, Judge Forrest denied Del Rosario's motion. Dkt. 103. She noted that, in imposing sentence, she had determined that a 292-month sentence was warranted, independent of the Guidelines, to achieve the purposes set out in 18 U.S.C. § 3553(a). *Id.* at 7. She stated that, on

---

[1] Del Rosario's prior narcotics conviction was too old to yield criminal history points. PSR ¶ 43.

reconsideration, the same factors that supported the original sentence continued to make a 292-month sentence necessary to achieve those purposes. *Id.*

On May 28, 2020, Del Rosario filed a *pro se* motion for a reduction of sentence pursuant to § 3582(c), based on Amendment 782. Dkt. 107. The case was transferred to this Court, with Judge Forrest having retired from the bench in 2018. Dkt. 108. The Court noted as substantial but did not resolve the Government's argument that Del Rosario's motion was impermissibly successive. Dkt. 115 at 4. The Court, however, denied the motion on a separate ground: that Judge Forrest had resolved (and denied) the identical motion four years earlier, that Del Rosario had not presented any new facts or arguments for relief, and that there was no convincing basis to reconsider Judge Forrest's assessment of the just and reasonable sentence, which had been based on the § 3553(a) factors. *See id.* at 5 ("[A]s a matter of comity and sound judicial administration, a successive § 3582(c) petition is to be discouraged where the pertinent facts are unchanged from the prior petition and the only changed circumstance is the assignment of the case to a new judge.").

On June 4, 2024, Del Rosario, *pro se*, filed a third motion for reduction of sentence pursuant to § 3582(c)(1)(A). Dkt. 122 ("D. Pet.") On June 24, 2024, the Government filed an opposition. Dkt. 124 ("G. Mem.").

## II. Discussion

### A. Standards Governing Compassionate Release Motions

"[U]pon motion of the defendant," and "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," the Court may reduce such defendant's sentence if it finds that

3

"extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of proving he is entitled to compassionate release. *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease." (citations omitted)); *see also, e.g., United States v. Clarke*, No. 9 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit defendants to initiate compassionate release proceedings; it required the BOP to seek such release on their behalf. *See United States v. Phillibert*, 557 F. Supp. 3d 456, 459 (S.D.N.Y. 2021). However, "[a]s part of the First Step Act of 2018, Congress authorized courts to reduce a term of imprisonment upon motion by a defendant." *United States v. Amato*, 48 F.4th 61, 63 (2d Cir. 2022) (per curiam).

Although Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence, *United States v. Brooker*, 976 F.3d 228, 232 (2d Cir. 2020) (citing 28 U.S.C. § 994(t)), before November 1, 2023, the Sentencing Commission's only guidance on this point had been promulgated prior to the enactment of the First Step Act. This guidance thus applied only to a "motion of the Director of the Bureau of Prisons," U.S.S.G. § 1B1.13 (historical note), and not "to compassionate release motions brought by defendants," *Brooker*, 976 F.3d at 236; accordingly, the Second Circuit held in 2020, this guidance "[could not] constrain district courts' discretion to consider whether any reasons [were] extraordinary and compelling" in such cases, *id. See also id.* at 237 ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). Thus, through November 1, 2023, when assessing a motion brought by an imprisoned defendant and not the BOP, a

4

district court was not constrained by U.S.S.G. § 1B1.13's enumeration of extraordinary and compelling reasons and could "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Id.* at 237.

Effective November 1, 2023, however, the Sentencing Commission amended the Guidelines to also cover defendant-initiated petitions. *See generally* U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023). The amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated.

The Commission's updated guidance identifies six circumstances that, singly or in combination, may so qualify. U.S.S.G. § 1B1.13(b). These are:

- *Medical circumstances of the defendant.* U.S.S.G. § 1B1.13(b)(1). In addition to previously recognized circumstances such as a defendant suffering from a terminal illness or a serious medical condition, *id.* § 1B1.13(b)(1)(A)–(B), the amended guidelines direct courts to consider whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care" that is not being provided in prison and without which the defendant is at risk of serious health deterioration or death, *id.* § 1B1.13(b)(1)(C), or is held at a facility affected by or at imminent risk of being affected by an outbreak of infectious disease or other "ongoing public health emergency declared by the appropriate federal, state, or local authority," where "due to personal health risk factors and custodial status," the defendant is at a greater risk of severe complications upon exposure, and where "such risk cannot be adequately mitigated in a timely manner." *Id.* § 1B1.13(b)(1)(D). This factor was informed by compassionate release decisions coming out of the COVID-19 pandemic. *See* U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 206 (Nov. 1, 2023).

- *Age of the defendant.* Coupled with a deterioration in physical or mental health corresponding with the aging process as well as the portion of the original sentence served at the time of a compassionate release motion, this may support sentence reduction. U.S.S.G. § 1B1.13(b)(2).

- *Family circumstances of the defendant.* Where the defendant is the "only available caregiver" for an immediate family member, this may support a sentence reduction. *See id.* § 1B1.13(b)(3).

5

- *Victim of abuse in custody.* Where the defendant while in custody on the sentence in question was a victim of sexual abuse, or physical abuse resulting in serious bodily injury "committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant," and the misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding," this may support a sentence reduction. *Id.* § 1B1.13(b)(4).

- *Catchall provision.* Where a defendant presents "any other circumstance or [a] combination of circumstances" that themselves or with the above circumstances are similar in gravity to those above, such may support sentence reduction. *Id.* § 1B1.13(b)(5). The Commission "rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity[.]" U.S. Sent'g Comm'n, Guidelines Manual 2023: Supplement to Appendix C at 207 ("[T]he Commission continues to believe . . . that judges are in a unique position to determine whether the circumstances warrant a reduction. Guidance beyond that provided in the amended policy statement regarding what circumstances or combination of circumstances are sufficiently extraordinary and compelling to warrant a reduction in sentence is best provided by reviewing courts[.]" *Id.* (cleaned up).

- *Unusually long sentence plus changes in law.* Where a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances. U.S.S.G. § 1B1.13(b)(6).

Finally, even if extraordinary and compelling reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

### B. Discussion

Del Rosario makes four arguments why extraordinary and compelling circumstances support his early release under § 3582(c)(1)(A). These are based on (1) changes in law since his sentencing; (2) the claim that the jury was required to make a factual finding to support the 20-year mandatory minimum sentence based on his prior felony; (3) his medical conditions; and (4) his asserted rehabilitation. The Government, opposing the petition, disputes that these grounds, singly or together, supply extraordinary and compelling circumstances justifying early release.

And it argues that, even if such circumstances were found, the § 3553(a) factors support the sentence imposed.[2]

### 1. Extraordinary and Compelling Circumstances

***Changes in law***: Invoking U.S.S.G. § 1B1.13(b)(6), Del Rosario argues that changes in the law since his sentencing result in a gross disparity between his sentence and the sentence he would be likely ordered to serve today. D. Pet. at 3. None of the three changes, or ostensible changes, in law to which Del Rosario points satisfy the requirements of this provision.[3]

Del Rosario first points to Amendment 782. But Judge Forrest determined after the operative date of that Amendment that it—and the lower advisory Guidelines range—would not have altered the sentence imposed, which, she explained, was based on her assessment of the § 3553(a) factors, not the Guidelines. Dkt. 103 at 7. And this Court, considering Judge Forrest's assessment of those factors given her role as the trial and sentencing judge, rejected Del Rosario's bid for a sentence reduction in his later § 3582(c) motion based on Amendment 782. Dkt. 115 at 4–5. From these rulings, it follows that Amendment 782 could not have created a gross disparity between Del Rosario's sentence and the sentence that would be imposed today.

Del Rosario next challenges Judge Forrest's finding applicable—as recommended by the PSR—the two-level criminal-livelihood enhancement of U.S.S.G. § 2D1.1(b)(14)(E). He argues that that Guidelines provision was not yet effective as of the end date of his offense. Thus, he argues, it was error—and a violation of the Constitution's Ex Post Facto Clause—for Judge

---

[2] The Government does not dispute that Del Rosario has exhausted his administrative options. He filed an administrative petition with the warden of FCI Dix on April 30, 2024, and the warden did not resolve that request within 30 days. G. Mem. at 4.

[3] In light of this determination, the Court does not have occasion to resolve the Government's separate argument that § 1B1.13(b)(6) exceeded the Sentencing Commission's authority. *See* G. Mem. at 6–7.

7

Forrest to impose a sentence based on a Guidelines range increased by that enhancement. Even assuming *arguendo* that Del Rosario is correct that his offense ended before the effective date of that enhancement, such that his Guidelines range was miscalculated at sentencing, Del Rosario is not entitled to relief under § 1B1.13(b)(6). Judge Forrest was repeatedly clear that the 292-month sentence was based on the § 3553(a) factors, not the advisory Guidelines range. She so stated both at sentencing and in later denying Del Rosario's first § 3582(c) motion based on Amendment 782. *See* Sent. Tr. at 40–41; Dkt. 103 at 7. And, even if she were mistaken in finding that Del Rosario's offense continued through the effective date of the enhancement, such did not disturb any of the *facts* regarding Del Rosario or his offense. It thus did not affect Judge Forrest's evaluation of the § 3553(a) factors. It follows that any error in calculating the Guidelines range would not have affected the sentence Judge Forrest imposed, let alone give rise to a gross disparity with the sentence that would be imposed today (which would similarly be based on the § 3553(a) factors).

In any event, these circumstances do not qualify as a change of law within the meaning of § 1B1.13(b)(6). That provision applies to post-sentencing changes that make the law at the time of a § 3582(c) motion more lenient than at sentencing. But the criminal-livelihood enhancement made the Guidelines more strict, not more lenient. And it continues to apply today. Put simply, Del Rosario's remedy for the asserted misapplication of the Guidelines was not a motion under § 1B1.13(b)(6). His remedy was, on direct appeal, to challenge the sentence as unlawful, on the ground that it was assertedly a product of an errant Guidelines calculation. Del Rosario did not do that. And in light of Judge Forrest's statements anchoring the sentence in the § 3553(a) factors, not the advisory Guidelines range, an appeal on this ground would not have secured Del Rosario relief.

Third, Del Rosario notes that the First Step Act lowered—from 20 years to 15 years—the mandatory minimum sentence applicable to drug offenses committed by people with a prior serious drug felony. That qualifies as an intervening change in the law within the meaning of § 1B1.13(b)(6). But it does not assist Del Rosario on this motion, because Judge Forrest imposed a sentence above (by 52 months) the 20-year mandatory minimum. The mandatory minimum thus did not drive Del Rosario's sentence. There is no basis to assume that, had the mandatory minimum applicable to Del Rosario been 15 years, his sentence would have been any lower. On the contrary, Judge Forrest twice stated—at sentencing and in denying Del Rosario's initial § 3582(c) motion—that she imposed the 292-month sentence because she viewed it as necessary to vindicate the § 3553(a) factors. Sent. Tr. at 40–41. Substantially for the reasons given by Judge Forrest, the 5-year reduction in the mandatory minimum would not affect the sentence likely to be imposed today. *See, e.g., United States v. Kitroser*, 15 Cr. 19, 2023 WL 3173513, at *4 (S.D.N.Y. May 1, 2023) (changes to applicable mandatory minimum sentence did not constitute extraordinary and compelling circumstance where the court had not imposed defendant's original sentence "with reference to the mandatory minimum term of imprisonment"); *United States v. Luke*, 14 Cr. 6089, 2024 WL 1693275, at *6 (W.D.N.Y. Apr. 19, 2014) (similar).

***Absence of jury factfinding of prior felony provision***: Del Rosario next argues that it was error for the determination that the prior felony provision applied, giving rise to a 20-year mandatory minimum sentence, to have been made by the Court, not the jury. That is wrong. Although a jury must ordinarily find facts that increase a mandatory minimum, *Alleyne v. United States*, 570 U.S. 99, 103 (2013), there is a narrow exception for the fact of a prior conviction, *see Almendarez-Torres v. United States*, 523 U.S. 224, 226–27 (1998). *Alleyne*, on which Del

9

Rosario relies, does not assist him, because that decision did not disturb the holding in *Almendarez-Torres*. *See* 570 U.S. at 111 n.1. In any event, as explained above, the prior felony conviction, imposing a 20-year mandatory minimum sentence, did not affect Del Rosario's sentence, which was above that threshold.

***Medical conditions***: Del Rosario next argues that his medical conditions constitute an extraordinary and compelling reason to reduce his sentence. That is wrong. For the reasons the Government explains, Del Rosario's medical records reflect manageable issues, relating to an enlarged prostate, gastritis, and head and neck pain. *See* G. Mem. at 9. Del Rosario has not demonstrated that he has conditions that place him at risk of serious deterioration in health or death or that are incapable of treatment while in BOP custody. Considered separately and together, his medical conditions fall short of justifying a reduction in sentence. *See, e.g., United States v. Harris*, No. 15 Cr. 445-11 (PAE), 2020 WL 5801051, at *4 (S.D.N.Y. Sept. 29, 2020) (defendant failed to show he "suffered from gravely concerning medical ailments" that distinguished him from other inmates); *United States v. Manzione*, No. 20 Cr. 461, 2023 WL 5200438, at *1 (E.D.N.Y. Aug. 14, 2023) (same); *United States v. LaFord*, No. 11 Cr. 1032-07 (PAE), 2020 WL 4677595, at *2 (S.D.N.Y. Aug. 12, 2020) (similar); *United States v. Teman*, No. 19 Cr. 696 (PAE), 2024 WL 1235616, at *5 (S.D.N.Y. Mar. 22, 2024) (similar).

***Rehabilitation***: Finally, Del Rosario argues that his steps towards rehabilitation support a reduction in sentence. He represents that he has taken more than 33 classes and programs, held multiple jobs, and earned his GED. D. Mem. at 10. He represents that, through these classes, he has "realize[d] that his actions during his criminal offenses were improper, a danger to society and cannot be tolerated." *Id.* He adds that his "way of thinking has changed"; that he has "learned to stop and review the situation and [that] his actions will [a]ffect others, not just him";

10

and that upon his release, he will "need to secure employment to provide for his family." *Id.* at 11.

A defendant's rehabilitation, in and of itself, is not among the circumstances that the Sentencing Commission has identified as an extraordinary and compelling reason for reducing a sentence, *see* U.S.S.G. § 1B.13(d), although it can be considered alongside other factors in determining whether this standard has been met. Del Rosario's participation in numerous classes and programs, and his work history while incarcerated, are undeniably productive and laudable. In particular, the number of classes and programs in which he has participated, although likely attributable in part to the duration of his imprisonment, exceeds that of many prisoners. The Court, however, cannot find these steps exceptional or usual. *See, e.g.*, *United States v. Corbett*, No. 10 Cr. 184 (PAE), 2023 WL 8073638 (S.D.N.Y. Nov. 21, 2023) (defendant's "participation in programming d[id] not make out an extraordinary circumstance"); *United States v. Needham*, No. 6 Cr. 911, 2022 WL 19769, at *4 (S.D.N.Y. Jan. 3, 2022) (finding rehabilitation through prison programming did not rise to the level of extraordinary and compelling reason for early release); *United States v. Bolden*, 15 Cr. 466, 2021 WL 242551, at *2 (S.D.N.Y. Jan. 25, 2021) ("[P]articipation in or completion of [programming], while laudable, is not an extraordinary and compelling reason warranting a compassionate release."); *United States v. Marmolejos*, No. 19 Cr. 626 (PAE), 2021 WL 807128, at *4 (S.D.N.Y. Mar. 3, 2021) (defendant's "commendable" efforts at rehabilitation in prison fell "well short" of justifying compassionate release). Nor does the Court find these steps, when considered in connection with the other bases Del Rosario cites, to differentiate him from the mine run of other inmates. *See, e.g.*, *United States v. Cueto*, No. 11 Cr. 1032-80 (PAE), 2024 WL 4345569, at *5 (S.D.N.Y. Sept. 30, 2024); *United States v. Torres*, No. 16 Cr. 500, 2021 WL 1131478, at *3 (S.D.N.Y. Mar. 24, 2021).

Del Rosario accordingly has not established extraordinary and compelling circumstances supporting compassionate release.

### 2. § 3553(a) Factors

Even if the new information that Del Rosario cites—his medical circumstances, classes taken and programs attended, and relevant changes in the law, such as Amendment 782—had together presented an extraordinary and compelling basis for early release, the § 3553(a) factors, considered in combination, continue to favor the sentence imposed.

As Judge Forrest noted both in fashioning the original sentence and in reaffirming it in denying Del Rosario's initial motion under § 3582(c), the evidence at trial demonstrated Del Rosario's longtime, high-level, central role in a large-scale, high-volume heroin trafficking network. *See* Sent. Tr. at 34–39; Dkt. 103 at 3–4. As the Government rightly notes in recapping the offense, Del Rosario's protracted and supervisory role made him the antithesis of a minor or short-duration narcotics trafficker. *See* G. Mem. at 10–11; *see also* Sent. Tr. at 38–39. The evidence also demonstrated that Del Rosario had not been deterred by his prior brush with the criminal justice system. He had been convicted of a drug trafficking offense in 1996, just a year after illegally entering the United States, yet he thereafter resumed—if not intensified—his drug smuggling and supplying. *See* G. Mem. at 10.

For these reasons, Judge Forrest reasonably found at sentencing that the § 3553(a) factors supported the sentence imposed. The offense was gravely destructive, she explained, and given the extent of Del Rosario's trafficking, there were many families who "will be living with the effects of the heroin in which [he] dealt for a very long time." Sent. Tr. at 37. She further reasonably anticipated that Del Rosario would "go back to drug dealing" following his release, which supported a long sentence as a means of protecting the public. *Id.* at 38–39. And, on Del

12

Rosario's first § 3582(c) motion, she reiterated her finding that the § 3553(a) factors favored the significant sentence imposed. *See* Dkt. 103 at 7.

This Court adopts Judge Forrest's assessment of the § 3553(a) factors based on the evidence known to her. She was not only the sentencing judge but the judge who supervised Del Rosario's trial. She was uniquely positioned to weigh these factors. And this Court finds her assessment of them persuasive. The Court has carefully considered whether the information obtained since Judge Forrest denied Del Rosario's initial application for early release under § 3582(c), including Del Rosario's medical conditions and productive steps while in prison, disturbs the balance of those factors. The Court's considered assessment is that it does not.

The Court accordingly denies Del Rosario's motion for a reduction of sentence, on the independent ground that the § 3553(a) factors, considered anew and in light of present-day information, continue to favor the sentence imposed. *See* 18 U.S.C. § 3582(c)(1)(A) (release permissible only if compatible with § 3553(a) factors); *see, e.g., United States v. Butler*, No. 18 Cr. 834-10 (PAE), 2022 WL 17968627, at *3 (S.D.N.Y. Dec. 27, 2022) (§ 3553(a) factors, considered "in totality," disfavored early release); *United States v. Wright*, No. 15 Cr. 445-3 (PAE), 2022 WL 134870, at *5 (S.D.N.Y. Jan. 13, 2022) (similar); *United States v. Hope*, 464 F. Supp. 3d 646, 650 (S.D.N.Y. 2020) (similar).

## CONCLUSION

For the reasons stated, the Court denies Del Rosario's motion for compassionate release. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 122 and to mail a copy of this decision to Del Rosario at the following address:

Benito Del Rosario
Reg. No. 65645-054
FCI Fort Dix
P.O. Box 2000
Joint Base MDL, NJ 08640

SO ORDERED.

*Paul A. Engelmayer*

PAUL A. ENGELMAYER
United States District Judge

Dated: December 10, 2024
       New York, New York

14